**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

In re: David Anthony Miller,                                    Case No. 19-31377

                                                               Chapter 7

                   Debtor.                                     Hon. Laura K. Grandy

## OBJECTION TO MOTION
## FOR RULE 2004 EXAMINATION OF DEBTOR'S COUNSEL

On April 7, 2020, during the pendency of a statewide stay-at-home order relating to the

COVID-19 global pandemic, the United States Trustee ("UST") filed the instant Motion for a

Rule 2004 Examination ("Rule 2004 Motion" or "Motion") seeking the oral examination of

UpRight Law partner attorney Ronald Buch ("Mr. Buch" or "Debtor's Counsel"). Remarkably,

the instant Motion is one of **50** Rule 2004 motions filed by the UST on that single day which

seek the oral examinations of UpRight Law clients and the UpRight Law partner attorneys who

represent them.[1] These 50 motions are *in addition* to **40** previously-filed Rule 2004 examination

motions involving other UpRight Law personnel or clients, which have already been granted.[2]

---

[1] *See* dockets in these 20 SDIL cases: *In re Burns*, 19-60349; *In re Crow,* 20-40187; *In re Lindsey,* 20-40179; *In re Smiley,* 20-60035; *In re Bond,* 20-40199; *In re Hill,* 20-40166; *In re Corey,* 20-40036; *In re Schnack,* 19-40714; *In re Brucker,* 19-31474; *In re Edwards,* 19-31476; *In re Jones,* 19-31602; *In re Hohensee,* 19-31537; *In re Cannon,* 19-31596; *In re Chapman,* 20-30177; *In re McClatchery,* 20-30186; *In re Scruggs,* 20-30203; *In re Reynolds,* 19-60357; *In re Cogswell,* 20-60021; *In re Suddeth,* 19-31287; and *In re Miller,* 19-31377.

[2] *See* dockets noting **33** examinations in these 15 SDIL cases: *In re Taylor*, 19-60245 (three exams (two of debtors and one of counsel)); *In re Dennis*, 19-40180 (two exams); *In re Dedmon-Gable*, 19-30087 (three exams); *In re Sierra-Scott*, 19-30157 (two exams); *In re Clark*, 19-30720 (three exams); *In re Mounce*, 19-30856 (two exams); *In re Lalumondiere*, 19-30905 (two exams); *In re Fouts*, 19-30988 (three exams); *In re Turner*, 19-30993 (two exams); *In re Chamberlain*, 19-31029 (two exams); *In re Lankford*, 19-31097 (two exams); *In re Orlov-Halsey*, 19-31140 (two exams); *In re VanDeventer*, 19-60152 (two exams); *In re Davis,* 18-60241 (one exam of counsel); *see also* footnote 3.

All told, to date the UST is seeking to take an astonishing **90** Rule 2004 examinations,[3] with accompanying document productions in some **39** cases, including the instant case.[4]

The instant Motion for a Rule 2004 examination should be denied for at least two reasons.

*First*, the requested examination falls outside the permissible scope of Rule 2004. The UST does not purport to seek a Rule 2004 examination of Debtor's Counsel to evaluate the conduct or financial condition of his client. No does the UST do so in order to assess the Debtor's right to a discharge. Instead, the UST states that she is seeking to take the examination of the Debtor's Counsel in order to learn about the "services provided by UpRight Law" because the nature of those services somehow "may affect administration of the debtor's estate." (*See* Motion at ¶¶ 13, 16). But the provision in Rule 2004(b) upon which the UST purports to rely does not create a loophole that would enable the UST to conduct a Rule 2004 examination in furtherance of an investigation of UpRight Law. *See e.g., In re Martelli*, No. BR 16-20316-PRW, 2017 WL 3098105 (Bankr. W.D.N.Y. July 20, 2017). Rather, that provision is confined to identifying movable assets of the bankruptcy estate, and accordingly does not justify the UST's request for an examination of Debtor's Counsel in furtherance of the UST's investigation of the reasonableness of UpRight Law's attorney fees.

*Second*, the UST cannot meet her burden of establishing "good cause" for the examination. A cost-benefit analysis of allowing the examination reveals that the costs

---

[3] The UST has already taken **7** Rule 2004 examinations in cases filed in this district by UpRight Law as Debtor's counsel. *See* dockets in *In re Johnson*, 19-60320 (Debtor, and his counsel Ronald Buch); *In re Haws*, 19-60222 (Debtor, and his counsel James Ford); *In re Potter*, 19-60216 (Debtor, and her attorney Eric Homa); and *In re Curry*, 18-60382 (UpRight Law employee David Engler).

[4] UpRight Law has already produced documents to the UST in some 16 of its cases in this district, and in almost all of those cases, the firm did so long before any production deadline.

significantly outweigh the benefits.    Allowing the examination would have the effect of burdening Debtor's Counsel with little, if any, corresponding benefit to the UST or the bankruptcy estate of the client.  If permitted, this and other examinations will outstrip the modest fees that UpRight Law charged its clients, to say nothing of the intangible costs associated with the allowance of such a process.  Moreover, "there is something repugnant in requiring an attorney to submit to a Rule 2004 examination, especially when debtor's counsel is the sought-after target." *In re French*, 145 B.R. 991, 993 (Bankr. D. S.D. 1992).  That the UST is now seeking, during the midst of a global pandemic, to take **50** examinations in addition to the **7** already taken and the **33** more that already have been authorized, underscores the abusive nature of the instant Motion and the other UST Motions.

In addition, this case was closed at the time the Motion was filed. *See* Docs. 21, 22.  Bankruptcy courts, like other federal courts, are courts of limited jurisdiction. *See, e.g., Iannini v. Winnecor*, 487 B.R. 434, 438 (W.D. Pa. 2012) (citing *In re W.R. Grace & Co.*, 591 F.3d 164, 175 (3d Cir. 2009)).  Generally, once a bankruptcy case is closed, the estate no longer exists, and the court lacks subject matter jurisdiction to impose relief. *Iannini*, 487 B.R. at 438 (citing *Walnut Assocs. v. Saidel*, 164 B.R. 487, 491 (E.D. Pa. 1994).  The Motion should be denied for this additional reason.

In short, the examination sought by the UST is outside of the proper scope of a Rule 2004 exam.  It is also sought without good cause.  In light of these reasons, which are more fully explained below, the UST's Motion should be denied.

## **ARGUMENT**

### I.  **The Motion should be denied because it exceeds the proper scope of a Rule 2004 examination.**

Although the *permissible* scope of a Rule 2004 examination is broad, there are clear

boundaries.  *See, e.g., In re Martelli*, No. BR 16-20316-PRW, 2017 WL 3098105 (Bankr.

W.D.N.Y. July 20, 2017) ("Every fisherman knows that there are catch limits and other

constraints on fishing expeditions. So too with Rule 2004."); *In re Strecker*, 251 B.R. 878, 880

(Bankr. D. Colo. 2000) ("[Rule] 2004 examinations are not an unfettered and totally unqualified

tool for 'fishing' for adverse information."); *In re Wilcher*, 56. B.R. 428, 433 (Bankr. N.D. Ill.

1985) ("Although the scope of the examination permitted under Bankruptcy Rule 2004 is broad

it is not without limits.").   Rule 2004(b) sets forth the permissible scope of a Rule 2004

examination as follows:

> Scope of Examination. The examination of an entity under this rule or of the
> debtor under §343 of the Code may relate ***only*** to [1] the acts, conduct, or
> property or to the liabilities and financial condition of the debtor, or [2] to any
> matter which may affect the administration of the debtor's estate, or [3] to the
> debtor's right to a discharge.

Fed. R. Bank. Proc. 2004(b) (emphasis added).  Hence, a Rule 2004 examination is justified ***only***

if it relates to at least one of the three prongs of Rule 2004(b).   Yet, the examination sought by

the UST does not relate to any of them.

## A.  The UST does not seek to justify her Motion under the first or third prongs of Rule 2004(b).

The UST is not seeking to justify her request for a Rule 2004 examination under either

the first or third prongs of Rule 2004(b).  Specifically, the UST does not purport to seek an

examination of Debtor's Counsel for the purpose of discovering information about the acts,

conduct, property, liability, or financial condition of his client.  (*See generally* Motion).  Nor

does the UST contend that she needs to take a Rule 2004 examination because she believes it is

germane to the debtor's right to a discharge.  (*See id*.)  Moreover, there is no evidence, or

argument by the UST to suggest, that revocation of any discharge already granted is warranted.

## B.  The UST's attempt to establish a basis for her Motion under the second prong of

**Rule 2004(b) is unavailing.**

Faced with the reality that prongs one and three of Rule 2004(b) do not justify the examination, the UST instead attempts to satisfy Rule 2004(b) by way of the statement that "[t]he fees UpRight Law charged and the assistance they provided may affect the administration of the above-captioned bankruptcy estate."  (*See* Motion at ¶13).  In other words, the UST appears to be attempting to establish a basis for the examination based on the second prong of Rule 2004(b).  However, this attempt is unavailing for at least two reasons.

First, the UST misinterprets the scope of Rule 2004(b).  The UST's attempt to avail herself of this portion of Rule 2004(b) is virtually identical to a prior unsuccessful attempt made by the United States Trustee in Region 2.  *See In re Martelli*, *supra*.  In that case, a Bankruptcy Court in the Western District of New York rejected the UST's efforts to obtain the examinations of UpRight Law's debtor-clients based on the theory that the information sought "may affect the administration of the debtor's estate."  In so holding, the *Martelli* court noted:

> The phrase, "any matter which may affect the administration of the debtor's estate," *is not viewed by this Court as a loophole through which an interested party—here, the UST—can wiggle to avoid the catch limits of Rule 2004(b)*. "Administration of an estate involves realizing the movable assets and paying out of them any debts and other claims against the estate." Administration, Black's Law Dictionary (10th ed. 2014).

*Martelli*, 2017 WL 3098105, at *3 (emphasis added).  Thus, the *Martelli* court interpreted the second prong of Rule 2004(b) to involve realizing the "movable assets" of the estate and using them to satisfy the debts and any other claims against the estate.  Conducting an examination of Debtor's Counsel for the purposes of learning about "other matters relevant to the services provided by UpRight Law" does not involve an examination for the purpose of discovering movable assets of the above-captioned bankruptcy estate.  *See id.* Accordingly, the UST's attempt to create a loophole in circumvention of Rule 2004(b)'s limits must be rejected.

Second, the UST's attempt to meet the requirements of the second prong fails for an additional reason. Even under the UST's incorrect interpretation of the second prong, the UST has not met her burden to show that the information sought in the examination of Debtor's Counsel would have any effect on the bankruptcy estate. The UST's Motion does not offer any explanation or analysis. The UST's Motion could be read to offer a severely attenuated theory that the UST *might* obtain information in the examination that *could* have a bearing on the reasonableness of the flat fee that UpRight Law charged the debtor. (*See* Motion at ¶ 14). This is turn *might* result in a reduction of the attorney fee, which in turn *could* result in assets being returned to the estate. (*See id*. at ¶13). But even granting the *arguendo* assumption that Rule 2004(b) recognizes such a theory (it does not), the UST has not shown that in event of a full or partial disgorgement, those relatively modest amounts would belong to the estate, *i.e.,* that they are not exempt. For that additional reason, the UST has failed to meet her burden.

**C. Rule 2004(b) does not contain a provision that permits investigation of third-parties unrelated to the Debtor's conduct or the Debtor's bankruptcy estate.**

The Motion states that "this inquiry directly relates to the Court's request to the UST to investigate [UpRight Law]." (Motion at ¶15). But Rule 2004 does not permit the investigation of third parties that are not related to the debtor's conduct or bankruptcy estate. *See Martelli*, 2017 WL 3098105, at *3 (rejecting UST's Rule 2004 Examination whose true intent was "to develop evidence of misconduct by UpRight Law and [its local partner]."); *In re Wilcher*, 56 B.R. at 434 ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."); *In re Underwood*, 457 B.R. 635, 646 (Bankr. S.D. Ohio 2011) ("[A] 2004 exam is simply not an appropriate tool for obtaining a broad range of information from a non-debtor that is not relevant to the debtor or her estate."). In rejecting the UST's attempts to seek a Rule 2004 examination for the purpose of investigating

UpRight Law, the *Martelli* court stated:

> Tellingly. . . . the UST reveals that the depositions of the debtors in the Martelli, Hagood, and Phillips cases have nothing to do with the administration of their estates, or acts or conduct of the debtors. . . . The UST's statement makes clear that the real purpose of the sought-after Rule 2004 examinations of Ms. Martelli, Mr. Hagood, and Mr. and Mrs. Phillips is to develop evidence of misconduct by UpRight Law and Mr. Racki—to be used in prosecuting the pending Adversary Proceeding. The UST acknowledges that the requested examinations of these debtors has nothing to do with the *acts or conduct of the debtors*, or matters affecting administration of the debtors' estates, or the debtors' right to a discharge. See Rule 2004(b) FRBP. The scope of the examinations requested by the UST is beyond that permitted by Rule 2004(b).

*See Martelli*, 2017 WL 3098105, at *3 (emphasis in original). The instant case involves precisely the same circumstances as *Martelli*, except that here, the UST seeks the examination of a far larger number of UpRight Law debtor clients, *and* the UST purports to seek the examinations of the UpRight Law attorneys who represented them.  As was true in *Martelli*, the examination has nothing to do with *the acts or conduct of the debtor*, or matters affecting administration of the Debtor's estate, or the Debtors' right to a discharge.  Rather, it is an attempt to investigate the "the services" that UpRight Law provided to its clients, *i.e.* UpRight Law's conduct.[5]

## II. The UST has failed to meet her burden to establish "good cause" for taking the examination.

A party seeking a Rule 2004 examination must establish "good cause."  *See In re Wilcher*, 56 B.R. at 434 (Bankr. N.D. Ill. 1985) ("[T]he examiner bears the burden of proving that good cause exists for taking the requested discovery."); *In re Eagle–Picher Industries, Inc.,* 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994).  Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or

---

[5] For example, this is not a case in which a debtor and a law firm are alleged to have acted in concert to achieve an unlawful objective.  To reiterate, the examination has nothing to do with the Debtor and is confined to an examination of the services that UpRight Law provides.  Rule 2004 simply does not permit this.

the denial of such request would cause the proposed examiner undue hardship or injustice. *In re Dinubilo*, 177 B.R. 932, 940 (E.D.Cal.1993). Furthermore, if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied. *In re Express One Int'l, Inc.,* 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998)*,* citing *In re Eagle–Picher Industries*, 169 B.R. at 134.

The UST's Motion does not address the "good cause" standard at all; indeed, the Motion does not even contain those words. Yet this is the UST's burden, which she has completely disregarded. In any event, an analysis of the Motion reveals that the UST cannot meet her burden because, *inter alia*, the costs of allowing the examination of Debtor's Counsel clearly outweigh the benefits to the estate.

### A. Application of a cost-benefit analysis clearly establishes that "good cause" for the examination is absent.

As noted, a request for Rule 2004 examination should be denied where the cost and disruption visited upon the examinee outweigh any benefits to the examiner. *In re Express One Int'l, Inc.,* 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998)*; see also In re Texaco Inc*., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("requested examination should not encompass matters that will be unduly burdensome to the debtor and duplicative of previously furnished information…"); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) ("…it is appropriate to apply the 'good cause' standard in what may be termed a 'sliding scale' manner or balancing test. That is to say, the level of good cause required to be established by the UST before she can obtain certain documents or pursue a certain line of inquiry in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved.")

The UST Motion does not acknowledge the costs associated with this examination (or any of the some 50 examinations that she sought in the Motions filed on April 7). The costs and

burdens on the Debtor's Counsel include, but are not limited to, the following:

- <u>Time commitment and travel costs associated with the examination</u>: An examination will require Debtor's Counsel to substantial devote time to the examination, in terms of preparation, actually sitting for the examination, and associated travel time. The UST's Motion is silent on logistics, but it is likely that the Debtor's Counsel will need to devote a full day to the examination when travel time and time representing the Debtor and the Debtor's examination are included. With respect to the current group of 50 Motions filed, the UST seeks **12** examinations of Ronald Buch and **8** examinations of James Ford. Thus, for these motions alone, the UST is seeking to require Mr. Buch to spend approximately two and a half weeks to allow the UST to investigate the nature of the services he is providing as an attorney of UpRight Law. The UST is seeking to require Mr. Ford to devote almost a week and a half on the same topic. The UST will also expect Debtor's Counsel to travel to the examinations in order to suit the convenience of the UST. Individually, and especially combined, these costs are extreme.

- <u>Health risks:</u> Presumably, the UST intends to abide by the stay-at-home order and not attempt to take any Rule 2004 examinations while this order is in effect. To the extent the UST wishes to do otherwise, the health risks attendant with the allowance of such an examination constitute an additional basis to object to the Rule 2004 examination. Moreover, the health risks associated with the pandemic and in-person groupings of people are almost certain to persist, even after relaxation of the stay-at-home order, until a vaccine is widely available.

- <u>Direct economic costs associated with the examination</u>: Each examination entails direct costs for Debtor's Counsel and/or UpRight Law. These include: (a) transcript costs associated with each examination, (b) transportation costs, and (c) defense costs.

- <u>Interference with the attorney client relationship</u>: Whether by design or not, the subject matter of the requested examinations have the potential to seek privileged and confidential information and interfere with the attorney-client relationship.

For these reasons (among others[6]) the requested examination imposes significant costs on

Debtor's Counsel (to say nothing of the debtor).

---

[6] For instance, the Rule 2004 examination of Debtor's Counsel would be duplicative of discovery the UST has already obtained. Prior testimony has already established, for example, that in all cases the UpRight Law partner attorney communicates directly with the Debtor and is actively involved with the representation of the Debtor, *at the very outset*, in conjunction with the Debtor's retention of the firm. Prior testimony also establishes that in all cases the partner attorney remains actively involved with the Debtor throughout the entirety of the matter, including during compilation of financial information and documents, strategic decision-making, petition signing, and the meeting of creditors.

On the other side of the cost-benefit equation, the benefits to the bankruptcy estate are difficult to discern. The stated purpose of the examination is to question counsel about the "services provided by UpRight Law." (Motion at ¶16). But the UST already knows that UpRight Law represented the Debtor in the Debtor's Chapter 7 bankruptcy. The UST believes she needs information about topics like "how the bankruptcy schedules and related documents were prepared and completed," "the timing of the various tasks," and "who performed the tasks," among other subjects. (*See id.*)

Somehow, the UST believes that this information *could* be relevant to the reasonableness of the flat fee that UpRight Law charged, and that it *could* result in some form of disgorgement of the fee. Even granting these dubious assumptions – the factual and legal underpinnings of which are barely addressed in the Motion[7] – it is unclear what benefit the UST would or could achieve on behalf of the estate. In most cases, it is likely that the amount of any fee that would be disgorged would go back to the debtor because it was exempt. The UST's Motion does not address this issue at all, and even if it did, the costs and burdens associated with the requested examinations are so extreme given the amount in controversy that the UST could not show the level of good cause required to justify them.

---

[7] The Motion offers little analysis as to how the requested examination would bear any relevance to the reasonableness of the fee that UpRight Law charged to the Debtor. The only hint of analysis is contained at paragraph 14 of the Motion, which opines that in "determining the reasonableness of the fees UpRight Law charged, it is unquestionably relevant whether a non-lawyer explained to the Debtor the differences between chapter 7 and chapter 13, thus defining and explaining terms of art." (Motion at ¶14). This is simply not true. Tellingly, the only authority that the UST cites is a 23-year old non-precedential bankruptcy court case that purports to apply Michigan (not federal or Illinois) law. In any case, there is no general prohibition on the provision of legal information. Indeed, the U.S. Courts' own website contains basic information about Chapter 7 and Chapter 13 bankruptcies, including the differences between them. *See* https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics. The U.S. Courts' website is one of many sources of legal information about bankruptcy that can be accessed by lawyers, legal assistants, and non-lawyers alike.

Moreover, even if a Rule 2004 examination of Debtor's Counsel (and the Debtor) constituted the first step in a chain of events that resulted in a portion of the attorneys' fees going to the bankruptcy estate,[8] the undertaking simply is not worth it. The attorney fees at issue in these cases range from $1,050.00 to $1,775.00; accordingly, the amount of any non-exempt portion available for the estate likely would be, at most, insignificant.[9] A potential of a few hundred dollars to a bankruptcy estate does not justify the imposition of the costs described on the Debtor. When the costs to Debtor's Counsel, and U.S. taxpayers (who must foot the bill for the UST's time, travel, transcript costs, etc.) are taken into account, it is evident that this Motion is pursuing an economically irrational undertaking.

**B. The Motion seeks an examination that would result in abuse to the Debtor and Debtor's Counsel.**

An examination cannot be used for purposes of abuse or harassment. *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (internal citations omitted). As noted above, including the **50** motions filed on April 7, 2020, the UST has to date issued requests to take **90** examinations of UpRight Law personnel and clients. As discussed above, even on an individual case basis, this exercise is economically irrational. Aggregated across dozens of cases and examinations if they are allowed, it would have the effect of being disruptive to the firm's clients and unfairly injurious to UpRight Law. The **90** examinations are sought in some **39** cases. In those cases, UpRight Law collectively earned attorney fees of approximately $58,000.00**.** Transcript costs alone are likely to exceed those fees if all of these examinations are permitted, to say nothing of travel and opportunity costs associated with these examinations. Good cause does

---

[8] Because there is no litigation pending, if the UST intends to seek disgorgement of UpRight Law's attorney fees, she would need to institute litigation. So this examination if allowed (and others sought) would merely be a precursor to that process.

[9] As previously noted, the UST's Motion makes no effort to meet her burden of showing good cause by analyzing what might be available to the bankruptcy estate.

not exist for the taking of this examination.

The fact that a significant number of the examinations sought, including this one, would involve examinations of *counsel* further underscores the improper nature of this examination. These examinations are likely to seek to invade the attorney-client privilege and intermeddle with the attorney-client relationship.  As noted, there is "something repugnant in requiring an attorney to submit to a Rule 2004 examination, especially when debtor's counsel is the sought-after target."  *In re French*, 145 B.R. at 993.  Good cause is lacking for the requested Rule 2004 examination of Debtor's Counsel and it should be denied.

## **CONCLUSION**

For the reasons stated above, UpRight Law respectfully requests that the Court deny the UST's Motion for a Rule 2004 Examination of Debtor's Counsel. The UST seeks this examination for purposes that are clearly outside of the Rule.  To the extent that the UST's Motion also purports to seek documents, that request should be denied as well.  If the Court is not inclined to deny the Rule 2004 examination and the demand for documents, UpRight Law respectfully requests and hereby moves that this Court enter a stay of the order to enable UpRight Law to pursue an appeal of this issue to the District Court.

Respectfully submitted,

/s/ *Charles A. Armgardt*
Charles A. Armgardt
UpRight Law LLC
Of Counsel
79 W. Monroe St.
Chicago, IL 60603
877-927-5451
carmgardt@uprightlaw.com

*Counsel for UpRight Law LLC and Ronald Buch*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon all counsel of record via CM/ECF filing system and to debtor listed below via regular first-class mail, proper prepaid postage and deposited at a U.S. Mailbox in Chicago, Illinois on or about April 14, 2020:

David Anthony Miller
200 South 4th St
Dupo, IL 62239

*/s/ Charles A. Armgardt*
Charles A. Armgardt